UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MICHAEL RUCKER, KRISTINA RUCKER,
ALEXIS PAYTEN RUCKER, MICHAEL
MASON RUCKER, and MARLEE MARIE
RUCKER,

      Plaintiffs,

      V.

JESSICA M. WOJTOWICZ HESTON,
individually and as former Trustee of
the KMR Life Trust DTD 02/20/15,

      Defendant.

No. 25 CV 7615

Judge Manish S. Shah

MEMORANDUM OPINION AND ORDER

Michael and Kristina Rucker relied on Jon Kubler for financial advice for over 25 years. When they found out he was being investigated by the SEC for running a Ponzi scheme, they questioned that advice and audited the investments they made with him. They found that a life insurance trust he had convinced them to establish as a retirement asset was actually a $160,000 liability. That trust was managed by the defendant here, Jessica M. Wojtowicz Heston. The Ruckers sued Heston for breach of fiduciary duty and unjust enrichment, and Heston now moves to dismiss that suit for failure to state a claim upon which relief can be granted. Because the complaint is too light on allegations to meet applicable pleading standards, the motion is granted.

## I. Legal Standards

To survive a motion to dismiss, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). When analyzing the sufficiency of a complaint, I construe it in the light most favorable to the plaintiffs, accepting all well-pleaded facts as true and drawing all inferences in their favor. *Atlanta Gas Light Co. v. Navigators Ins. Co.*, 164 F.4th 1038, 1046 (7th Cir. 2026). In addition to the allegations in the complaint, I may "consider documents incorporated into the complaint by reference and matters of which a court may take judicial notice." *Id.*

Rule 8(a) "does not demand detailed factual allegations, but it does require more than mere 'labels and conclusions,' or a 'formulaic recitation of the elements of a cause of action.'" *Wertymer v. Walmart, Inc.*, 142 F.4th 491, 494–95 (7th Cir. 2025) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Id.* at 495 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Put another way, the complaint must "present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).

Beyond the requirements of 8(a), to the extent that plaintiffs' claims sound in fraud, they "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (holding that "Rule 9(b) applies to 'averments of fraud,' not claims of fraud").

2

## II.    Facts

Michael (Mike) and Kristina Rucker met while they were both attending the University of Nebraska. [1] ¶ 8.[1] After college, Mike had a successful career in the National Football League until his retirement in 2008. [1] ¶ 7. While still in college at Nebraska, Mike met Jon Kubler, whom Mike came to rely on for financial advice. [1] ¶¶ 10–11. In 2023, the Securities and Exchange Commission filed an enforcement action against Kubler, and several entities owned and controlled by him, alleging that he was running a Ponzi scheme. [1] ¶ 54. After learning of the SEC enforcement action, the Ruckers audited their finances and discovered extensive mismanagement, malfeasance, and theft. [1] ¶¶ 55–56.

In 2015, Kubler approached the Ruckers about forming a trust for the purpose of taking out a life insurance policy on Kristina. [1] ¶ 12. Jessica M. Wojtowicz Heston, an Illinois attorney whom Kubler introduced to the Ruckers, was brought on to establish that trust, and she travelled to North Carolina to meet with the Ruckers in person before it was formed. [1] ¶¶ 12–14. After that initial meeting, Heston took all direction with respect to the trust from Kubler and rarely, if ever, communicated with the Ruckers. [1] ¶ 14. Heston executed an irrevocable trust agreement for KMR Life Trust on February 20, 2015. [1] ¶¶ 15, 18.[2] The trust agreement is facially signed

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. The facts are taken from the complaint, [1].

[2] The complaint at paragraph 15 alleges the date February 20, 2025, [1] ¶ 15, but the attached exhibit is dated February 20, 2015, and paragraphs 16 and 18 allege the date of purported execution as February 20, 2015. [1-2] at 77; [1] ¶¶ 16, 18.

by Kristina Rucker and Heston, and notarized in Chicago, but Kristina was in North Carolina on the date of signature. [1] ¶¶ 16–19. The complaint alleges that Kristina's signature on the trust agreement was forged, and Heston knew or should have known it was a forgery. [1] ¶¶ 17, 24.

Despite the forged trust agreement, Heston acted as the trustee of KMR Life Trust and made all decisions in that capacity. [1] ¶ 33. Heston obtained a $14,000,025 life insurance policy on Kristina and executed a promissory note to obtain a $1,092,551.14 premium-financing loan. [1] ¶¶ 34–36. Heston made premium payments of $375,000 each on September 2015, 2016, and 2017, but the unused loan proceeds were left uninvested in a bank account over those two years, earning only 1% interest. [1] ¶¶ 38, 43, 48. Heston only made two small payments for less than $800 total on the premium-financing loan, one in October 2015, and the second in October 2017. [1] ¶ 42. From 2015 to 2023, the premium-financing loan accrued over 7% interest on its balance. [1] ¶ 43. In September 2022 and September 2023, Heston executed documents deferring interest payments on the loan, causing the interest to be compounded and become principal owing under the note. [1] ¶ 44. By the time the Ruckers investigated the trust, the balance due on the loan had grown to $1,335,085.58 [1] ¶ 47.

After 2017, when the funds from the premium-financing loan were exhausted, Heston made no additional premium payments under the life insurance policy. [1] ¶ 49. As a result of Heston's failure to make premium payments, excess interest generated by the insurance policy went to pay the premiums. [1] ¶ 52. Those 10

payments, which ranged from $21,136.46 to $59,524.58, substantially decreased the value of the policy. [1] ¶ 52. By November 2023, the policy's surrender value was $1,185,890.44; substantially less than the balance owed under the premium financing loan. [1] ¶ 53. In December 2023, the Ruckers surrendered the policy at cash value and paid an additional $160,000 to satisfy the premium-financing loan. [1] ¶ 62. Believing that Heston established and administered KMR Life Trust for the benefit of Kubler and herself, rather than the beneficiaries, the Ruckers brought this suit against Heston.

## III.  Analysis

Illinois has enacted a statute of repose for certain actions against attorneys.[3] That statute, 735 ILCS 5/13-214.3, provides, in relevant part:

> (b) An action for damages based on tort, contract, or otherwise (i) against an attorney arising out of an act or omission in the performance of professional services … must be commenced within 2 years from the time the person bringing the action knew or reasonably should have known of the injury for which damages are sought.
>
> (c) Except as provided in subsection (d), an action described in subsection (b) may not be commenced in any event more than 6 years after the date on which the act or omission occurred.

Subsection (b) provides a statute of limitations, while subsection (c) provides a statute of repose. "Statutes of limitations and statutes of repose are close cousins, but they serve different goals and operate in slightly different ways." *Augutis v. United States*,

---

[3] This court has jurisdiction because Heston is a citizen of Illinois, plaintiffs are citizens of North Carolina, and the amount in controversy is more than $75,000. [1] ¶¶ 1–6; 28 U.S.C. § 1332(a)(1). Illinois law applies. *See Paulsen v. Abbott Lab'ys*, 39 F.4th 473, 477 (7th Cir. 2022) (noting that a federal court sitting in diversity applies the choice-of-law rules of the forum state and, under Illinois choice-of-law rules, the forum state's law applies unless an actual conflict is shown or the parties agree that forum law does not apply).

732 F.3d 749, 752 (7th Cir. 2013). A statute of limitations "determines the time within which a lawsuit may be commenced after a cause of action has accrued," while a statute of repose "extinguishes the action after a defined period of time, regardless of when the action accrued." *Evanston Ins. Co. v. Riseborough*, 2014 IL 114271, ¶ 16 (2014). Because plaintiffs did not learn about the basis for this case until September 2023 and filed suit within two years, [1] ¶ 56, Heston only argues for applying the statute of repose.

A statute of repose is an affirmative defense, and "[p]laintiffs are not required to anticipate or refute potential affirmative defenses in the complaint." *Reilly v. Will Cnty. Sheriff's Off.*, 142 F.4th 924, 930 (7th Cir. 2025). But if "the complaint pleads facts that conclusively establish that the plaintiff's claim is time-barred, dismissal at the pleading stage can be appropriate." *Id.*; *see Augutis*, 732 F.3d at 752–55 (affirming dismissal where statute of repose barred claim); *cf. Logan v. Wilkins*, 644 F.3d 577, 582 (7th Cir. 2011) ("While a statute of limitations defense is not normally part of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), when the allegations of the complaint reveal that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim.")

For the statute of repose to apply here, (1) the action must be against an attorney, (2) it must arise out of an act or omission in the performance of professional services, and (3) the final act or omission giving rise to the action must have occurred before July 7, 2019. 735 ILCS 5/13-214.3. Plaintiffs do not dispute that Heston is an attorney, but the latter two elements are controverted.

6

The statute of repose applies to claims "arising out of an act or omission in the performance of professional services." In *Evanston Ins. Co. v. Riseborough*, 2014 IL 114271 (2014), the Illinois Supreme Court read the language of § 13-214.3 broadly:

> The "arising out of" language indicates an intent by the legislature that the statute apply to all claims against attorneys concerning their provision of professional services. There is no express limitation that the professional services must have been rendered to the plaintiff. Nor does the statute state or imply that it is restricted to claims for legal malpractice. Had the legislature wished to do so, it could have limited the statute to legal malpractice actions or to actions brought by a client of the attorney. Instead, the statute broadly applies to "action[s] for damages based on tort, contract, *or otherwise* * * * arising out of an act or omission in the performance of professional services," which encompasses a number of potential causes of action in addition to legal malpractice.

¶ 23 (quoting 735 ILCS 5/13–214.3(b)) (emphasis added to statute by Illinois Supreme Court). The court in *Evanston Ins.* held that the statute of limitations applied to non-clients bringing claims against an attorney arising out of the provision of legal services.

Plaintiffs contend that § 13-214.3 only applies to actions performed by an attorney, as an attorney—that is to say, only the practice of law. [22] at 11–13. But the statute does not only apply to legal services; it applies to professional services. The Illinois Legislature knows how to use the phrase "legal services," and does so elsewhere in the code and chapter 735. *E.g.*, 735 ILCS 5/5-105.5 (defining "civil legal services"). The Legislature also uses the phrase "professional services" outside of the legal context, such as in the statute of limitations for public accounting. *E.g.*, 735 ILCS 5/13-214.2. Illinois courts have rejected limiting "professional services" in the accounting context to services that only accountants may perform. *Mitchell v.*

*Stonecasters, LLC*, 2018 IL App (2d) 180127, ¶ 25 (2018). For accountants, "professional services" include business valuations and tax return preparations, things which do not require one to be a CPA. *Id.* Serving as a trustee is a similarly common, but not exclusive, service that attorneys provide.

If Heston's actions and omissions as a trustee are "professional services" within the meaning of § 13-214.3, plaintiffs argue the statute of repose is still inapplicable because Heston took affirmative action that resulted in harm as late as 2023. "The statute of repose in a legal malpractice case begins to run as soon as an event giving rise to the malpractice claim occurs, regardless of whether plaintiff's injury has yet been realized." *Lamet v. Levin*, 2015 IL App (1st) 143105, ¶ 20 (2015). In other words, the statute of repose period runs from the last single overt act or omission that caused injury to the plaintiffs. *Id.*; *see also Carlson v. Michael Best & Friedrich LLP*, 2021 IL App (1st) 191961, ¶¶ 49–51 (2021). A continuing relationship is not sufficient to toll the statute of repose. *Lamet*, 2015 IL App (1st) 143105, ¶ 20. To survive a motion to dismiss, there only needs to be "a conceivable set of facts, consistent with the complaint," that would render the complaint timely. *Reilly*, 142 F.4th at 930.

While many of the events that caused the Ruckers harm occurred before 2019, the complaint alleges that in September 2022 and September 2023, Heston executed documents deferring interest payments under the premium-financing loan. [1] ¶ 44. One of the injuries that plaintiffs allege is the deterioration of the value of the trust, as measured through the net difference between the loan and the value of the policy. [1] ¶ 77. While the parties dispute whether any duty existed or whether Heston

breached that duty, the decision to defer interest payments was an overt act capable of causing injury to plaintiffs, and that is all that is required at this stage. The statute of repose does not bar plaintiffs' complaint.

To state a claim for a breach of fiduciary duty under Illinois law, a plaintiff must allege that "(1) a fiduciary duty exists; (2) the fiduciary duty was breached; and (3) the breach proximately caused the injury of which the plaintiff complains." *Ball v. Kotter*, 723 F.3d 813, 826 (7th Cir. 2013) (citing *Neade v. Portes*, 193 Ill.2d 433, 444 (2000)). All three elements are disputed, but the lack of facts supporting the existence of a fiduciary relationship is fatal to the current complaint.

"A fiduciary relationship exists when there is a special confidence reposed in one who, in equity and good conscience, is bound to act in good faith and with due regard to the interest of the one reposing the confidence." *Avila v. CitiMortgage, Inc.*, 801 F.3d 777, 782 (7th Cir. 2015) (quoting *Hensler v. Busey Bank,* 231 Ill.App.3d 920, 928 (4th Dist. 1992)). A trustee typically owes a fiduciary duty to beneficiaries. *Giagnorio v. Emmett C. Torkelson Tr.*, 292 Ill.App.3d 318, 325 (2d Dist. 1997) ("Generally, a trustee owes a fiduciary duty to a trust's beneficiaries and is obligated to carry out the trust according to its terms and to act with the highest degrees of fidelity and utmost good faith."). But those with no preexisting relationship remain strangers in the eyes of the law "unless both consent by word or deed to an alteration of that status." *DeWitt Cnty. Pub. Bldg. Comm'n v. County of DeWitt*, 128 Ill.App.3d 11, 27 (4th Dist. 1984) (quoting *S. Trust Co. v. Lucas*, 245 F. 286, 288 (8th Cir.1917)). "A trust will not arise unless there is an outward expression of the settlor's intention

9

at the time of the trust's purported creation." *Jackson v. Callan Publ'g, Inc.*, 2021 IL App (1st) 191458 ¶ 218 (2021).

The allegations in the complaint are self-defeating as they pertain to the existence of a fiduciary duty. Plaintiffs allege that Heston was the trustee of a life trust established on February 20, 2015, but they also allege that the instrument creating that trust is invalid because Kristina Rucker's signature was forged. [1] ¶¶ 4, 15–2; *see also* [1] ¶ 33 ("Despite the fact the Trust Documents were forged, Heston acted as the Trustee on the Ruckers' and Beneficiaries behalf and made decisions in the capacity of a trustee which bound the Ruckers."). The complaint does not include any allegations of contact between when Heston travelled to North Caolina to meet plaintiffs in person before KMR Life Trust was formed, [1] ¶ 14, and the plaintiffs requesting documents from Heston after being informed of an SEC enforcement action against Kubler in late 2023, [1] ¶ 59. If the written agreement is invalid—and, taking the allegations in the complaint as true, it must be—and there were no further communications until 2023, the complaint has not alleged any "outward expression of the settlor's intention at the time of the trust's purported creation." *Jackson*, 2021 IL App (1st) 191458, ¶ 218. A written trust agreement is not necessary to create a fiduciary duty, but then there must be other allegations to support an inference of the settlor's intention toward the beneficiaries. Only then would statutory obligations, *e.g.*, 760 ILCS 3/901(a), fill in any gaps about the scope of the trustee's duty. Absent the existence of a trust, there is no fiduciary duty, and plaintiffs have failed to state claim for breach of a fiduciary relationship.

If the KMR Life Trust instrument controls, Heston owed a fiduciary duty to the plaintiffs but did not breach that duty as set out by the written agreement. A trustee is "obligated to carry out the trust according to its terms and to act with the highest degrees of fidelity and utmost good faith." *Giagnorio*, 292 Ill.App.3d at 325. Under the terms of the trust agreement, all powers relating to investment decisions were vested in Kubler as the Investment Trust Advisor, and Heston was obligated to follow his direction in all respects in managing trust investments. [1-2] §§ 4.01–4.03, 12.03. Heston was "not required to inquire into or monitor the investment of the trust assets or the directions of the Investment Trust Advisor." [1-2] § 4.01(b). The agreement also abrogates any prudent investor or prudent person rule, allowing the trustee to disregard "whether a particular investment … will produce a reasonable rate of return or result in the preservation of principal." [1-2] § 12.03. Under the terms of the KMR Life Trust agreement attached to the complaint, plaintiffs have not alleged any breach of the duties imposed therein.

"In Illinois, 'to state a cause of action based on a theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience.'" *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011) (quoting *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.,* 131 Ill.2d 145, 160 (1989)). The only benefits allegedly received by Heston were payments she received as the trustee for KMR Life Trust and additional client referrals from Kubler. [1] ¶ 69. Without an adequately alleged

11

claim for breach of fiduciary duty, there are likewise not adequate allegations to support the claim that any payments Heston may have received were unjustly retained. And while future business may explain Heston's motive for assisting Kubler in carrying out a scheme to defraud, any additional client referrals she received would not have been to the plaintiff's detriment. The allegations of unjust enrichment are also insufficient.

Because it is not certain from the face of the complaint that amendment would be futile, dismissal is without prejudice. *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago and N.W. Indiana*, 786 F.3d 510, 519 (7th Cir. 2015) ("Ordinarily, however, a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend her complaint before the entire action is dismissed."). If plaintiffs file an amended complaint, they should be mindful of the pleading standards under Federal Rules of Civil Procedure 8(a) and 9(b). While they have not asserted a claim for fraud, they have alleged that Heston was complicit in forging Kristina Rucker's signature and "churning" the life insurance policy, a type of fraud. [1] ¶¶ 24, 70. A claim premised on a course of fraudulent conduct implicates Rule 9(b)'s heightened pleading requirements. *Borsellino*, 477 F.3d at 507. A complaint alleging any such claims "must provide 'the who, what, when, where, and how." *Id.*

## IV.   Conclusion

Heston's amended motion to dismiss, [14], [21], is granted. Plaintiffs' complaint, [1], is dismissed without prejudice. Plaintiffs have leave to file an amended

complaint by May 4, 2026. If an amended complaint is not filed, the dismissal will automatically convert to a dismissal with prejudice and the clerk will enter judgment.

ENTER:

_____

Manish S. Shah
United States District Judge

Date: April 13, 2026

13